IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES, | * |
| Plaintiff, | * |
| v. | *   Crim No. 23-cr-00441 |
| DEJUAN LEONARD, | * |
| Defendant | * |

\* \* \* \* \* \* \* \* \* \* \*

**Motion to Suppress Evidence**

Dejuan Leonard, through undersigned counsel, respectfully moves this Honorable Court, pursuant to Rule 12(b)(3) of the Federal Rules of Criminal Procedure, for an order suppressing evidence recovered due to his unlawful search and seizure in violation of the Fourth Amendment.

## I.  INTRODUCTION

On a sunny afternoon in September 2023, a Prince George's County Police Department (PGCPD) "proactive policing" team—consisting of four officers driving four vehicles—pulled over Mr. Leonard, who was driving a car with permanent Virginia plates, for an alleged tint violation.

Mr. Leonard was calm, polite, and compliant throughout the stop. On request, he immediately provided Cpl. Wigmore—who had initiated the stop—with a valid driver's license and lawful registration. Despite this, Cpl. Wigmore ordered him out of his car, patted him down for weapons (none were found), and ultimately told him she would impound his car because of the tint and because he did not have insurance.

After telling Mr. Leonard his car would be impounded, Cpl. Wigmore entered the vehicle and searched only the passenger and center console compartments. When she opened

1

the center console, she saw a gun, stood up, and announced "George"—a code word for gun used by Prince George's County Police officers. Mr. Leonard was immediately put in handcuffs by two officers. Only *after* this did Cpl. Wigmore inform Mr. Leonard that she was going to do an inventory search of his vehicle.

This search and seizure was unlawful for three primary reasons.

***First***, there was no lawful basis for the traffic stop. Because the car was lawfully registered in Virginia., Maryland's window tint law did not provide the officers a valid basis to stop the car. By its terms, the statute does not apply to cars that are registered out of state.

***Second,*** Cpl. Wigmore did not have a legal justification to frisk Mr. Leonard because she did not have a particularized and objective basis for suspecting that he was armed and dangerous.

***Third***, even if the traffic stop was initially justified, police officers had no lawful basis to impound Mr. Leonard's car, and thus, had no authority to conduct an "inventory search" of his car.

In sum, the stop, seizure, and search of Mr. Leonard and his car was riddled with constitutional violations. The evidence seized from Mr. Leonard pursuant to this stop, as well as any of his subsequent statements, must be suppressed as fruits of a Fourth Amendment violation. *See Wong Sun v. United States*, 371 U.S. 471 (1963).

## II. BACKGROUND

Mr. Leonard is charged in a one-count indictment with being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g). The charge stems from a September 12, 2023, traffic stop by at least four officers working with the Westphalia Division VIII Community Action Team.

According to discovery, the officers were conducting "high visibility patrols" in Suitland, Maryland, when they observed a dark blue Hyundai Azera being operated with purportedly "illegal tinting material." The car bore permanent Virginia plates with up-to-date registration stickers.

Cpl. Wigmore initiated a traffic stop at 12:38 PM, and with three other police vehicles, pulled Mr. Leonard to the side of the road, where the four police vehicles parked in front of and behind him. Cpl. Wigmore approached the car but before reaching the driver's side window, she asked Mr. Leonard to roll down his windows. Mr. Leonard complied. Cpl. Wigmore told Mr. Leonard she was stopping him because, although she knew he had Virginia tags, his tint was "so dark," and that there would be "no way at night that you can drive safely and see out of this." She requested Mr. Leonard's license, which he retrieved from his back pocket, and his registration, which he retrieved from the glove compartment. As they spoke, two other officers—Cpl. Clark and Pfc. Groce—approached the passenger side and began looking intently into the car. Mr. Leonard remained calm and compliant throughout the encounter.

Cpl. Wigmore then ordered Mr. Leonard to step out of the car, explaining that she wanted to put a tint meter on his window to show him the tint reading and run his license. When Mr. Leonard stepped out, Cpl. Wigmore asked if he had anything that would "poke us, stick us, hurt us." Mr. Leonard said no, but nevertheless, Cpl. Wigmore asked: "Do you mind if I check to make sure you don't have a knife, or syringe or an axe on you?  Are you ok with that?" Mr. Leonard replied "yeah," and put up his arms. Cpl. Wigmore patted him down with no results. She then ordered Mr. Leonard to wait on the hood of her police cruiser while she ran his license.

Mr. Leonard was escorted to the cruiser by Pfc. Guevara where he was joined by Officers Clark and Groce. The officers spoke to Mr. Leonard about the tint and his registration

but did not give a Miranda warning. While they spoke, Cpl. Wigmore returned to the driver's seat of her cruiser to run Mr. Leonard's license.

During the conversation with Officers Guevara, Clark and Groce, Mr. Leonard told them that he did not have insurance, and that was why he had registered the car in Virginia. (Virginia, unlike other states, permits drivers to operate a vehicle without insurance, *see* VA ST § 46.2-706(A)). Officer Guevara then asked Mr. Leonard to consent to a search of the car to "speed up the process." When Mr. Leonard declined, Pfc. Guevara responded: "OK alright, we can go the route of towing it, and then we'll search the car. And then you'll probably be walking."

After this exchange, Cpl. Clark, who had been standing with the officers surrounding Mr. Leonard, walked over to Cpl. Wigmore's cruiser. When he came to her passenger side window, Cpl. Wigmore told him that she "may tow it [Mr. Leonard's car] for tint." Cpl. Clark responded that he had seen a bag in Mr. Leonard's back seat that said "raw," but that he could not see inside it, and that Mr. Leonard had refused to consent to a search of his vehicle. Cpl. Wigmore answered that it was "OK," explaining that she was going to make sure his driver's license was "good" but would "probably" tow the car for the tint.

Cpl. Wigmore exited her cruiser, and asked Mr. Leonard if he had insurance on the car. He confirmed he did not. Cpl. Wigmore then told him that she could not let him drive without insurance or have front windshield tint and that she would have to tow his car. Officers Groce, Guevara, and Clark then directed Mr. Leonard to sit on the curb in front of Cpl. Wigmore's cruiser, where they remained standing over him on either side and continued to speak to him.

Cpl. Wigmore went back to Mr. Leonard's car, where she opened the passenger side door and then opened the passenger side console and the center console. After looking into the

center console, she quickly stood up and announced "George."[1] In response, Cpl. Clark and Pfc. Groce immediately instructed Mr. Leonard to put his hands behind his back and handcuffed him. Cpl. Wigmore then radioed in that they would have "one in custody, 7A recovered."[2]

Cpl. Wigmore returned to her cruiser and the other officers. After conferring with Pfc. Groce, she told Mr. Leonard that she was going to conduct an "impound search" of his vehicle, which she described as a "thorough search of the car to inventory everything in the vehicle." Cpl. Wigmore then returned to the car, where she took photographs of the vehicle exterior, the front seat, the back seat, and inside a bag in the backseat, where she found marijuana. She then—for the first time—used the tint meter to take readings from the driver side window and photographed those as well. At 12:47 PM, almost 15 minutes after the stop had begun, the officers finally advised Mr. Leonard of his Miranda rights.

### III.  ARGUMENT

#### A.  The Traffic Stop was Illegal.

The Fourth Amendment protects against unreasonable searches and seizures. U.S. Const., amend. IV. A person is seized, under the Fourth Amendment, "when, by means of physical force or a show of authority, his freedom of movement is restrained." *United States v. Mendenhall*, 446. U.S. 544, 553 (4th Cir. 1980). It is well settled that a traffic stop is a Fourth Amendment seizure that must meet constitutional muster. *Delaware v. Prouse*, 440 U.S. 648, 653 (1979) (holding that "spot checks" of cars to check vehicle registration or licensing compliance was unreasonable). Such a seizure is valid "if it is justified by probable cause or reasonable suspicion." *United States v. Johnson*, 734 F.3d 270, 275 (4th Cir. 2013). In practice,

---

[1] Counsel understands that "George" is code for officers observing a weapon.

[2] Counsel understands that "7A" is code for a firearm.

this "standard is met . . . when officers observe a traffic violation." *Id.*[3] A passenger in a car pulled over in a traffic stop is "seized" for Fourth Amendment purposes. *Brendlin v. California*, 551 U.S. 249 (2007). The burden to justify such a seizure rests with the government. *See United States v. McGee*, 736 F.3d 263, 269 (4th Cir. 2013).

An officer may not jump to the conclusion that a facially compliant car is in violation of the criminal or traffic. code unless the officer is specifically aware of facts to substantiate this theory. *See, e.g., United States v. Feliciana*, 974 F.3d 519, 523 (4th Cir. 2020) (traffic stop on unsupported theory that trucker did not have permit to operate commercial vehicle on federal parkway was unreasonable); *United States v. Wilson*, 205 F.3d 720, 724 (4th Cir. 2000) (en banc) (traffic stop invalid when officer could not read expiration date on temporary tag).

Here, Mr. Leonard was seized when he was pulled over by police officers. Yet, the facts known to the officers did not supply them with either reasonable suspicion or probable cause that a Maryland traffic violation had occurred.

The government is likely to argue that the officers properly stopped the car on suspicion of violating Maryland's window tint statute. But Maryland law does not regulate the tint of cars that are registered out of state. Because the officers had no basis to believe that car was registered in the state of Maryland at the time of the stop, and in fact had every indication that it was lawfully registered in Virginia, the government's argument must fail.

---

[3] Courts in the Fourth Circuit have used the probable cause and reasonable suspicion standards somewhat interchangeably when examining traffic stops. *See, e.g., United States v. Bowman*, 884 F.3d 200, 209 (4th Cir. 2018); *United States v. Sowards*, 690 F.3d 583, 588 (4th Cir. 2012) (quoting *Whren v. United States*, 517 U.S. 806, 810 (1996)). In the traffic context, there is little practical difference between the two standards. The officer must have reasonable basis to believe a traffic violation occurred to justify the stop.

Maryland Transportation Code § 22-406(i) is the state's window tinting law. This provision advises that "a person may not operate a vehicle registered under § 13-912, § 13-913, § 13-917 or § 13-937 of this article on a highway in this State" unless the vehicle's tint complies with certain minimum light transmission requirements. Md. Code Ann., Transp. § 22-406(i)(1). If the vehicle is registered under § 13-912,[4] all the windows in the car must have tinting lighter than 35%. *See* Md. Code Ann., § 22-406(i)(1)(i). If the car is registered under §§ 13-913, 13-917, or 13-937,[5] only the windows "to the immediate right or left of the driver" need to comply with the 35% benchmark. *Id.*, § 22-406(i)(1)(i). Therefore, this law prescribes permissible window tint based on how the car in question is registered with the state of Maryland.

However, § 22-406(i) does not apply to cars that are registered out of state. Each of the registration laws cross-referenced in § 22-406(i) refers to classes of vehicles which are "registered with the Administration." *See* §§ 13-913(a), 13-916(a), 13-917, 13-937(a). The "Administration," as the term is used in the Maryland traffic code, refers to the Maryland Motor Vehicle Administration or "MVA." *See* Md. Code Ann., Transp. § 11-102 ("'Administration' means Motor Vehicle Administration")). The import of this clear language is that cars not "registered with the Administration" need not comply with the Maryland's window tint law.

This exception for out-of-state cars is logical. If the window tint laws applied to cars registered in other states, drivers would have to consult the traffic code and change their vehicle equipment every time they cross the state line. Thus, the law allows for reasonable

---

[4] *I.e.*, registered as a car or station wagon with the MVA. Md. Code Ann., Transp. § 13-912(a).

[5] *I.e.*, as a vehicle for hire, *see* § 13-913(a), a truck, *see* § 13-917(a), or a "multipurpose passenger vehicle," *see* § 13-937(a) with the MVA.

variation in many equipment provisions for out-of-state cars. *See, e.g.*, Md. Code Ann., Transp. § 22-222(b) (requirement for "multi-beam road-lighting equipment" only applies to vehicles registered in Maryland); *id.*, § 22-221(g) (only vehicles registered in Maryland must have front and rear "warning lamps" which can flash simultaneously as a traffic hazard warning); *id.*, § 22-403(b) (only vehicles registered in Maryland must have driver's side rear view mirrors); *id.*, § 22-405.2(b)(3) (permitting vehicle registered out of state to use certain specialty tires). Simply put, a car registered out of state does not violate § 22-406(i) when this provision quite deliberately only regulates Maryland cars.

This conclusion is not only supported by common sense and a plain reading of § 22-406(i), but also by binding precedent from a published Fourth Circuit decision, as well as a recent decision from the District of Maryland. In *United States v. Frank Johnson*, the Fourth Circuit considered a challenge to a traffic stop based putatively on South Carolina's "window tinting law." 256 F.3d 214 (4th Cir. 2001). The defendant was driving on a South Carolina highway in a Georgia-registered car when a state trooper pulled him over because his back window was so dark the trooper "couldn't see anything in the car." *Id.* at 215. After a canine alerted at the side of the vehicle, the trooper searched the car and discovered two kilograms of cocaine. *Id.* at 215–16.

In a brief and decisive opinion, the Fourth Circuit held that the traffic stop was unreasonable. As in Maryland, South Carolina's window tint law provides that "[n]o person may operate a motor vehicle that is required to be registered in [South Carolina] on any public highway" unless its windows have greater than 27% light transmission. *Id.* at 216 & n.1. Given that the car was displaying valid Georgia plates, the court recognized that the defendant was simply not violating the South Carolina tint law and could not be lawfully stopped on this basis. *Id.* at 217. Further, because the trooper was not aware of other evidence suggesting that the

driver was skirting South Carolina's registration law (for example, by living in the state but neglecting to register the car there) the court rejected the argument that the trooper could effectuate the stop to investigate whether the tint law applied because the car was "required to be registered" in the state. *Id.* at 216–17. In short, the trooper violated the Fourth Amendment's requirement that he conduct a traffic stop based only on suspicion of genuinely "unlawful conduct." *Id.* at 217 (quoting *Wilson*, 205 F.3d 720 at 722–23) (emphasis omitted).[6]

Recently, Judge Chuang held that Maryland's window tinting law only applies to vehicles registered in the state of Maryland. Judge Chuang ruled that a traffic stop based on illegal window tint was invalid where the car was registered in Georgia. *United States v. Brooks*, 679 F.Supp.3d 225, at 234–35 (D. Md. 2023).

Under *Frank Johnson* and *Brooks*, Mr. Tutt's seizure violated the Fourth Amendment.

**B. The Frisk of Mr. Leonard was Illegal.**

Cpl. Wigmore's frisk of Mr. Leonard was illegal because she did not have a reasonable basis to suspect that Mr. Leonard was armed and dangerous. "To justify a patdown of the driver . . . during a passenger stop . . . the police must harbor reasonable suspicion that the

---

[6] Consistent with *Frank Johnson*'s reasoning, several courts have reached similar decisions in analogous cases outside the Fourth Circuit. *United States v. Granado*, 302 F.3d 421, 423 (5th Cir. 2002) (no probable cause for car stop because Texas's requirement that cars possess a front license plate applied only to cars registered within the state); *United States v. Lyons*, 687 F.3d 754, 762 (6th Cir. 2012) (noting the government's concession that a car stop could not be predicated on a window obstruction statute which did not apply to cars registered out of state); *United States v. Leal*, No. 3:03-CR-31-J-32HTS, 2003 WL 21665126, at *10–11 (M.D. Fla. Mar. 28, 2003) (Florida window tint provision applied only to Florida-registered cars); *State v. Eldridge*, 249 N.C. App. 493, 499–500 (2016) (invalidating traffic stop of out-of-state vehicle that lacked a driver's side mirror when this provision only applied to cars registered in North Carolina); *State v. Morgan*, 154 Idaho 109, 112 (2013) (requirement for front and rear license plate applied only to cars registered in Idaho); *United States v. Timms*, 2023 WL 8543510 at *5 (C.D. Ill. Dec. 11, 2023) (no reasonable suspicion to believe a traffic violation occurred where Illinois statute regulating tint stated that the tint restrictions did not apply to out of state vehicles).

person subjected to the frisk is armed and dangerous." *See Arizona v. Johnson*, 533 U.S. 323, 333 (2009); *United States v. Powell*, 666 F.3d 180, 185–86. To meet this standard, the officers must have "particularized and objective basis for suspecting that the person to be frisked is armed and dangerous." *Powell*, 666 F.3d at 185–86. Here, the circumstances of the stop did not establish reasonable suspicion that Mr. Leonard was armed and dangerous. The stop was in the middle of the afternoon on the side of a busy road, and Mr. Leonard was calm and collected throughout the encounter.  The frisk was unconstitutional.

### C. The Impoundment of Mr. Leonard's Car was Illegal.

Even if the traffic stop was initially justified, the officers' decision to impound the car violated the Fourth Amendment because the circumstances did not reasonably justify seizure or impoundment. *See, e.g., United States v. Brown*, 787 F.2d 929, 932 (4th Cir. 1986); *United States v. Bullette*, 854 F.3d 261, 265–66 (4th Cir. 2017). The government has the burden to show justification for the impoundment. *See Coolidge v. New Hampshire*, 403 U.S. 443, 454–55 (1971) (holding that the burden is on the Government to show that an exception to the warrant requirement applies).

Here, impoundment was unreasonable because it did not conform to either the Prince George's County ordinance governing impoundment of vehicles without prior notice, Prince George's Cty., Md. Code of Ordinances § 26-166 (2015), or to the Maryland Transportation code.

The Prince George's Code of Ordinances § 26-166 generally prohibits police form impounding a vehicle without notice.  Police may impound a vehicle only in specifically enumerated circumstances but driving with a tinted windshield or without insurance is not among them.  *Id.* The Prince George's County's Police Department General Orders recite a

similar rule. *See* Prince George's County Police Department General Order Manual, Vol. 2, Ch. 36, 7.

Further, the Maryland transportation code covering tint of safety glass tells police officers exactly what to do when they encounter a violation. It directs: "If a police officer observes that a vehicle is being operated in violation of paragraph (1) of this subsection [prohibiting certain tint], the officer may stop the driver of the vehicle of the vehicle and, in addition to a citation charging the driver with the offense, issue to the driver a safety equipment repair order in accordance with the provisions of §23-105 of this article." Md. Code Ann., Transp. § 22-406(i)(2). This provision does not authorize or instruct an officer to impound a vehicle, let alone impound one without notice.

Even if the impoundment did comport with law, these circumstances did not reasonably justify impoundment. The Fourth Circuit has recognized that whether an impoundment is reasonable depends on whether there was "no known individual immediately available to take custody of the car." *See Brown*, 787 F.2d at 932; *United States v. Cartrette*, 502 F. App'x 311, 315 (4th Cir. 2012); *see also United States v. Duguay*, 93 F.3d 346, 353 (7th Cir. 1996). Here, the officers made no efforts to determine whether there was a driver who could be available to take or tow the vehicle.

Because police had no lawful basis to impound Mr. Leonard's car, this too violated the Fourth Amendment. And without a lawful basis to impound the car, police had no lawful authority to conduct an inventory search of the car either. Therefore, the evidence seized pursuant to that search must be suppressed.

## IV. CONCLUSION

Mr. Leonard moves to suppress all physical evidence seized from him and all statements made after his seizure as fruits of Fourth Amendment violations. *See Wong Sun v. United States*, 371 U.S. 471 (1963).

Mr. Leonard requests an evidentiary hearing on this motion.

**Dated: May 13, 2024**                             Respectfully submitted,

                                                    JAMES WYDA
                                                    Federal Public Defender

                                                    ___/s/_____
                                                    PATRICIA L. RICHMAN (Bar # 803572)
                                                    ELLIE MARRANZINI (#817525)
                                                    Office of the Federal Public Defender
                                                    6411 Ivy Lane, Suite 710
                                                    Greenbelt, Maryland 20770
                                                    Phone: 301-344-0600
                                                    Fax: 301-344-0019
                                                    Email: patricia_richman@fd.org
                                                           ellie_marranzini@fd.og

## REQUEST FOR HEARING

Pursuant to Rule 105.6 of the Local Rules of the United States District of Maryland, a hearing is requested on the defendant's Motion.

/s/ .
PATRICIA L. RICHMAN (Bar # 803572)
Assistant Federal Public Defender

## **CERTIFICATE OF SERVICE**

    I hereby certify that on May 13, 2024, a copy of the foregoing was served via CM/ECF to parties in this matter.

                                           /s/                            .
                                PATRICIA L. RICHMAN (Bar # 803572)
                                Assistant Federal Public Defender